HOWARD P. WALTON and BRADLEY JAMES, trading under the name and firm of WALTON & JAMES, *v.* JAMES E. BLACK, and JAMES E. BLACK *v.* THE SAME FIRM.

In a written agreement for the purchase of merchantable ice, to be delivered thereafter, the terms mean such ice as could be sold in the market at the ordinary price prevailing in it when delivered.

Where by the terms of the agreement the vendor was to sell and deliver on shipboard at his place of business ten thousand tons of merchantable ice in

equal parts during the months of May, June, and July then next ensuing, properly packed for a voyage from the State of Maine to Wilmington, Delaware, where the purchasers resided, at a price per ton stipulated in the contract, the purchaser must first name the ship and give the vendor notice of his readiness to receive it on board of her at the place of shipment.

The purchaser of goods to be delivered in installments and to be paid for as so delivered cannot claim further deliveries without paying for the part which has been delivered, and therefore he cannot require the tender of any more of them by the vendor without doing so.

Where a purchaser of goods shipped to him accepts a draft on him by the vendor for the price of them before the ship's arrival with them, and on her arrival receives and retains them, he is bound to pay it, although they may not be merchantable or in accordance with the stipulation in the contract as to quality if they are of any value whatever.

THESE were cross-actions of *assumpsit* with the usual pleas between the parties named, and by consent of counsel were tried together before the same jury. The action first mentioned was on a written agreement between the parties dated April 21st, 1874, in which the firm of Walton & James agreed to buy and receive from James E. Black ten thousand tons of merchantable ice, properly packed on board, for a voyage to Wilmington, Delaware, from the State of Maine, the same to be shipped in equal parts during the months of May, June, and July, 1874, and to pay for it in accepted drafts due and payable in sixty days from the date of the signing of the bill of lading of each cargo of the above ice, properly drawn through the banks, as customary in such transactions, for which they agreed to pay four dollars and fifty cents per ton on board in the State of Maine.

The first cargo, consisting of three hundred and five tons, was shipped to them in Wilmington, and on the 8th of May, 1874, Black drew a draft on them at sixty days for one thousand three hundred and seventy-two dollars and fifty cents, and forwarded it with a bill of lading of that date attached by mail to them but which they refused to pay at maturity, because, as they alleged, the ice was not merchantable and of such quality as the contract required. As to the quality of the ice, several witnesses were examined on each side, and the testimony was conflicting and contradictory in its character. Both actions were for the alleged breach of the agreement by the respective defendants.

*Patterson* for Walton & James, and *Spruance* for James E. Black, in each of the cases.

*The Court, Comegys, C. J., charged the jury:* That it was only necessary to instruct them as to the legal character and the construction of the contract between the parties, which was in writing.

The meaning of the term merchantable ice which occurs in it was such as could be sold in the market at the usual and ordinary price then prevailing in it, and that the meaning of the agreement or contract was that Walton & James should during the months mentioned in it notify Black when vessels to be paid for by them would be at his place of business, Saco, in the State of Maine, there to receive the ice bargained for to be shipped on board of them, by him for them, to the amount of ten thousand tons in all, during those months, and that they would there have it properly packed on board of such vessels sent by them for a voyage to Wilmington in equal parts or quantities during the same months and to pay him four dollars and fifty cents per ton for it on board in the State of Maine, in accepted drafts to be drawn by him on them at sixty days from the date of the signing of the bill of lading of each of the cargoes of it, and the fact proved and not disputed that such was the course pursued by both of the parties with regard to the shipment of the first cargo of it early in the month of May in that year, might be considered by the jury as evidence that such was the understanding as to the meaning of the contract by both of the parties to it.

There were also certain well-settled principles of law which were applicable to the construction of such a contract as this which should guide and govern the jury in the consideration and decision of the questions of fact involved in the cases now before them, and one of which was that where the vendor is to deliver a specified quantity of goods on shipboard at the port of shipment within a certain period, the purchaser must first name the ship and give the vendor notice of his readiness to receive them on board of her ; another was that the purchaser of goods to be delivered in installments and to be paid for as deliv-

ered cannot claim further deliveries under the contract without paying for the part which has been delivered, and therefore he cannot require the vendor to tender the balance without paying for the part which he has received. Again, where the purchaser of goods shipped to him accepts a draft for the price of them before the arrival of the ship, and receives and retains them, he is bound to pay the draft, although the goods are found to be unmerchantable and not in accordance with the contract, if they are of any value whatever; for while fraud or a total failure of the consideration for the acceptance is a good defense in such a case, a partial failure of it is not.

It would be for the jury, however, to determine from the evidence, which was quite conflicting and contradictory on that point, what was the quality and value per ton of the ice, and what was the quantity of it delivered by Black to Walton & James during the time limited and designated in the contract or during any part of it ; and if he was prevented from delivering to them during the three months mentioned merchantable ice to the amount of ten thousand tons by the failure or refusal on their part to receive it as agreed upon in the contract, then how much of the ten thousand tons of such ice he was so prevented by them from delivering to them, and the profit he would have realized upon it at the stipulated price of four dollars and fifty cents per ton, had it been delivered by him to them pursuant to the stipulations of the contract. In the case of *Black* v. *Walton & James*, provided the jury should be satisfied from the evidence and upon the principles of law which had just been stated to them by the court, that he was entitled to recover in the action, the basis and measure of the damage to be found for him would be the amount of the profits so lost, if any, in consequence of his being prevented by them from delivering to them the whole quantity of ice specified in the contract as before stated, together with the amount of his draft on them of the date of the 8th of May, 1874, for one thousand three hundred and seventy-two dollars and fifty cents at sixty days, with interest thereon from its maturity and the costs of protest, subject, however, to such deductions therefrom as the jury may consider and believe ought to be made in their favor by reason

of any inferiority, if there was any proved to their satisfaction, in the quality of the ice which was delivered to and received by them to that of the ice which was contracted to be delivered to and to be received by them, and all of which by the terms of the contract was to be merchantable ice.

As they were cross-actions being tried together, they could set off the claim in the one case against the claim in the other, and return their verdicts in the two cases accordingly. Black, the defendant, had a verdict in the first case for costs, and the plaintiff, in the second, a verdict for four thousand five hundred and twenty-nine dollars and forty-seven cents.